# KING v. BARBER.

1. **Bill of Exceptions:** DIRECTION TO INSERT INSTRUCTIONS: DUTY OF CLERK: PRESUMPTIONS. Where appellant in a "skeleton" bill of exception recites in due order that the court on its own motion gave certain instructions, and directs the clerk to insert them, and certain instructions are inserted accordingly, this court will presume that the clerk did his duty, and inserted all the instructions so given, and will not presume, without any evidence, that other instructions were given at the request of either party, which were not by the bill made matter of record.

2. **Partnership:** LAW FIRM: CONTRACT FOR SERVICES WITH PARTNER
BEFORE PARTNERSHIP: HOW FAR BINDING ON OTHER PARTNER.
Plaintiff made a contract with H., an attorney, for legal services at a
stipulated price.  Afterwards H. entered into partnership with A., and
the services were, during the partnership, rendered by the firm, and
after the dissolution they were continued by both members of the firm.
In an action for the services rendered by A. after the dissolution, *held*
that he was bound by the contract made with H., and could not recover
a *quantum meruit*, unless there was a new employment of A. after the
dissolution, or the defendant had knowledge, or should under the cir-
cumstances have had knowledge, that A. was not rendering his services
under the contract, but expected to be paid their reasonable value.

*Appeal from Lee Circuit Court.*

WEDNESDAY, OCTOBER 17.

ACTION AT LAW.  Judgment for the plaintiff, and defendant
appeals.

*D. N. Sprague*, for appellant.

*Geo. F. Hatch* and *Hagerman, McCrary & Hagerman*,
for appellee.

SEEVERS, J.—In June, 1873, Scott Howell was an attorney
at law.  The defendant employed him to commence an
action against Bower, or Bower & Bradley.  There was evi-
dence tending to show that there was a special contract made
as to the compensation to be paid Howell.  The latter com-
menced the action.  On the first day of July thereafter, J.
G. Anderson entered into partnership with Howell for the
period of three years.  During the continuance of the part-
nership, the firm attended the litigation under and by virtue
of the arrangement with Howell.  During the partnership,
an action was brought in which the defendant intervened,
and in which the firm acted as his attorneys.  But whether
this litigation was included in the special contract made with
Howell was a controverted question.  After the dissolution
of the firm, Anderson attended to the litigation, and so did
Howell.

There was evidence tending to show that Anderson did not have knowledge of the special contract made with Howell until some time after the dissolution, and that he repudiated it when the same came to his knowledge.

The evidence also tended to show that the defendant had knowledge of the dissolution, and that he corresponded with Anderson in relation to the litigation. This action was brought to recover for the services of Anderson rendered subsequent to the dissolution.

The errors assigned and discussed by counsel relate to the instructions given and refused. The appellee insists that these errors cannot be considered, because the record fails to show that the instructions given are all before us, and because the instructions are not sufficiently identified by the bill of exceptions.

These questions will be first considered.

I.   The bill of exceptions is a "skeleton" bill, and, among other things, states: "After the introduction of said testi-

1. BILL of ex- mony, counsel argued the case to the jury, and
ceptions: di-
rection to in- the court gave the following instructions on his
sert instruc-
tions: duty of own motion, to wit: (here insert instructions).
clerk: pre-
sumptions.    To the giving of which instructions, and each
and every one of the said instructions, defendant then and there excepted, and especially excepts to instructions Nos. four and six, because etc."

We understand the exceptions were taken at the time the instructions were given, and that this appears from the bill of exceptions. It further appears that the court gave certain instructions, which were directed to be inserted in the bill of exceptions. It is the duty of the clerk to file and preserve the instructions, and he can and must determine, when he makes out the transcript, what instructions he must insert therein as having been given by the court. He was directed to insert in the "skeleton" bill of exceptions the instructions so given. This we understand to mean *all* instructions given. This has been done, and such instruc-

tions are in the record. All the instructions given are, therefore, before us, unless we should presume that instructions were asked and given on the motion of either party. We do not think such a presumption should be indulged.

The instructions given, therefore, are all before us, and we think they are sufficiently identified as the instructions given by the court on its own motion. In other words, it is the charge of the court which is referred to. If this is not a sufficient identification, then the universal practice of preparing "skeleton" bills must be discontinued. The cases of *Hill v. Holloway*, 52 Iowa, 678, and *Wells v. B., C. R. & N. R. Co.*, 56 Id., 520, do not conflict with these views.

II. The court instructed the jury as follows: "If the jury should find from the evidence that defendant never 2. PARTNER-SHIP: law firm : contract for services with partner before partnership : how far binding on other partner. employed Jos. G. Anderson, but employed H. Scott Howell, and they further find that defendant had no knowledge that said Anderson was performing service for his benefit after July 1, 1877, the date of the dissolution of the firm of Howell & Anderson, then your verdict should be for defendant. There is no evidence tending to show that Jos. G. Anderson had knowledge of a special contract made by H. Scott Howell with defendant, Barber, and such contract if proved will not prevent the plaintiff from recovering the reasonable value of any service rendered by Jos. G. Anderson for defendant at his request, or with knowledge on part of defendant that the service was being rendered for his benefit after July 1, 1877."

In the consideration of the instructions, it must be conceded that there was a special contract made with Howell by which he agreed to accept a named compensation for his services. Anderson entered into partnership with Howell, and the firm attended to the litigation until its dissolution. Anderson, as a member of the firm, was bound by the contract previously made by Howell, whether he had knowledge thereof or not. The firm accepted the business pending,

subject to all contracts then in existence. Anderson, up to the dissolution of the firm, was entitled to compensation under the contract made with Howell, and not otherwise. There was no separate employment of Anderson, nor individually was he entitled to compensation after the dissolution of the firm. Anderson continued the litigation. For some time afterward, at least if at all, there was no new employment, or express request that Anderson should attend to the plaintiff's business. The most that can be said is that there was an implied request, because his services were rendered and accepted. While the defendant had knowledge of the dissolution of the partnership, he was not notified in what capacity or why Anderson was attending to his business.

Anderson, as we have said, up to a certain time was bound by the special contract. None other was ever made with him. It therefore follows that he continued to be so bound, unless, under the circumstances, a different contract can be implied. Such an implication should not and cannot, we think, be made, under the circumstances, simply because Anderson rendered and the defendant accepted his services; and yet this is the rule of the instructions.

It may be that the defendant had sufficient knowledge that Anderson, after the dissolution, worked and labored for him, not because of the prior employment of the firm, but in his individual capacity, under a new employment for which he was to be compensated. It may be that such employment could be implied from the acts and conduct of the parties. But the jury should have been instructed that they must find that there was such employment, or that the defendant had knowledge, or should under the circumstances have had knowledge, that Anderson was not rendering his services under any contract theretofore made, but expected to be paid what his services were reasonably worth.

REVERSED.