Smiley v. Cockrell.

SMILEY *et al.* v. COCKRELL *et al., Executors, Appellants.*

1. **Administration:** SUIT TO SET ASIDE FINAL SETTLEMENT : REVIVOR OF SUIT AGAINST EXECUTORS OF ADMINISTRATOR : FINAL SETTLEMENT OF EXECUTORS PENDING SUIT. A suit in equity was instituted to set aside, for fraud, the final settlement of one as administrator, and the latter having died, the suit was revived against his executors, the present defendants ; whereupon the cause was tried, and resulted in a judgment for the executors in the circuit court, but on appeal to the Supreme Court it was reversed, with directions to the circuit court to set aside the final settlement, and to make an accounting, which was done, and judgment was entered for plaintiffs in the sum of $5,463.75. At the latter trial the executors objected to its being proceeded with, because they, in the meantime, had made final settlement of their executorship, and there was, therefore, no one to represent the estate of their testator. *Held,* that the objection was without merit.

2. ———— : ———— : ———— : ————. The executors were guilty of a fraud in making a final settlement when, as they must have known, the estate they represented was not fully administered, and such fraud was, in some sense, a continuation of the original fraud of their testator.

3. ———— : ———— : ———— : ————. When the trial court ruled that the executors were still proper parties to this suit, the proper

92 105
107 240

92 105
108 438

92 105
110 182

92 105
129 508

92 105
143 146

92 105
145 208

92 105
163 68

92 105
92a 139

92 105
169 686

course for them to have pursued if desirous of testing the validity, of the final settlement, and of their discharge as executors, was to have tendered a bill of exceptions, and abandoned the case then.

4. ——— : ——— : ——— : ———. They could not, as was attempted in the circuit court, disavow their executorship, and still claim and exercise their right to defend the suit in that capacity.

5. **Evidence :** RECORD OF CONVEYANCES. The original record of deeds is admissible in evidence, as well as certified copies of the same.

6. ——— : PRACTICE IN SUPREME COURT. The judgment in this case not reversed because of the admission of such record, although the preliminary affidavit of the loss of the original was not made as contemplated by Revised Statutes, section 697.

*Appeal from Pettis Circuit Court.*—HON. J. P. STROTHER, Judge.

AFFIRMED.

*W. W. S. Snoddy* for appellants.

(1) The circuit court erred in admitting the records of the deeds and mortgages instead of the originals. If the original deeds, or mortgages, were lost or destroyed, proof of their loss or destruction should have been made. If they were in existence, but not in possession or power of respondents, steps should have been taken to procure them, or, at least, evidence should have been introduced to account for their non-production in some way. And, even had respondents proved all these things, then a certified copy of the record would have been the next best evidence, and not the record book itself. These propositions are so potent as to require no citation of authorities to support them. (2) The court erred in proceeding to try that cause when there was no party in court to represent the interest of the estate of George W. Smiley, deceased. A citation had been issued to the executors in the year 1880, requiring them to make final settlement at the February term, 1881. They

Smiley v. Cockrell.

made their final settlement, and were discharged from their trust. Whether this was right or not they had no longer power to represent the estate of George W. Smiley. There was no party in court who could legally appear for said estate; there must be an adverse party in court, either a real party in interest, or one legally authorized. An infant must be represented by a guardian, or next friend; the estate of one deceased, by an administrator or executor. If these appellants made a final settlement when they should not have done so, and were discharged, the estate should not be allowed to suffer by it. They had no more right to appear for the estate of the deceased than an administrator or executor who had been removed, or who had resigned. The judgment of the probate court, approving the final settlement and discharging appellants, stood as a valid judgment, and could not be ignored until set aside, or reversed. It was the duty of the circuit court to see that an administrator was appointed for the estate when a suit was pending, either generally, by the probate court, or the circuit court sitting as a court of chancery, before proceeding with the trial, should have appointed an administrator *de bonis non.*

*G. P. B. Jackson* for respondents.

(1) This court will not disturb the finding of the court below, upon a mere conjecture that possibly it should have been different. (2) The court properly admitted in evidence the records of the several deeds, to which respondents were not parties, and of which they did not have the control. *Gilbert v. Boyd,* 25 Mo. 27; *Barton v. Murrain,* 27 Mo. 235–239; *Avery v. Adams,* 69 Mo. 603. (3) The appellants could not trifle with the court, and their conduct amounted to an appearance. *Tower v. Moore,* 52 Mo. 118; *Barnes v. McMullins,* 78 Mo. 260–277. The final settlement and order of discharge did not oust the jurisdiction of the circuit or

Supreme Court, nor prevent those courts from proceeding to a final determination of this case. *Seibel v. Simeon*, 62 Mo. 255 ; *State ex rel. v. St. Louis County Court*, 38 Mo. 402 ; *Mollan v. Torrance*, 9 Wheat. 537 ; *Tapley v. Martin*, 116 Mass. 275 ; *Upton v. Railroad*, 25 N. J. Eq. 372 ; *Koppel v. Heinrichs*, 1 Barb. 449 ; *Mabley v. Judge*, 41 Mich. 31 ; *Estate of Harlan*, 24 Cal. 182. The circuit court had jurisdiction in the estate. R. S., secs. 191, 186. Final settlement could only be properly made when the estate was fully administered. R. S., sec. 239. Under our system of administering estates *plene administravit* cannot be pleaded. *Covington v. Burnes*, 1 Dill. 16.

SHERWOOD, J.—This case was here on a former occasion. *Smiley v. Smiley*, 80 Mo. 44. It was an equitable proceeding to set aside for fraud the final settlement of Geo. W. Smiley, as administrator of H. W. Smiley, and for an accounting. Geo. W. Smiley having died after service of summons, the proceeding was revived against his executors, the present defendants—Green S. Cockrell and Wm. M. Henderson. The suit was instituted in 1877, service being had on Geo. W. Smiley and one of the securities on his bond as administrator, James W. Beaman, in April of that year. The other surety, Hunter, was not served. In the opinion of the court when this case was formerly here, it is stated : "The other security, Beaman, was one of the judges of the county court which approved the settlement of Smiley, and discharged him and his securities." The final settlement sought to be set aside was made May 3, 1869. The executors, Cockrell and Henderson, and the defendant, Beaman, appeared to the action, and filed an answer at the January term, 1878, and subsequently thereto filed an amended answer, which, as to Beaman, was finally withdrawn, and judgment by default entered.

The cause was first tried at the May term, 1880, where judgment was rendered against the plaintiffs, from which they appealed, and at the October term, 1883, this court reversed the judgment, remanded the cause, with directions to the circuit court to set aside the final settlement and ascertain, on a full accounting, the amount received by him (the administrator), with all interest due to the plaintiffs, and render a decree therefor. The cause was again heard by the circuit court, at the October term, 1884, when that court, acting in obedience to our mandate, entered a decree setting aside the final settlement of Geo. W. Smiley, administrator, on the ground of fraud and thereupon took an accounting, resulting in a judgment in favor of plaintiffs, in the sum of $5463.75, against Beaman, personally, and against the other defendants in their representative capacity. From this judgment said executors have appealed.

The pleadings were the same, and the evidence the same, except as hereinafter noted, as when the cause was here before. Objection was taken by the executors, who were the only appearing defendants, to the cause being proceeded with against them. Here is the record they made on that point:

"When said cause was called for trial, the former executors of the estate of G. W. Smiley, deceased, the original defendant herein, stated that in 1881, they had made final settlement of said estate, and were discharged from their trust as such; that there was now no executor or administrator of said estate, and there was no one to represent the estate in said cause in this court; that they appeared only for that purpose. Said executors objected to the court proceeding against them as executors on said grounds. The court overruled said objections, and held that said former executors represented the interests of said estate, as adversary parties to the plaintiff, and proceeded with said trial against said

former executors, to which action of the court the said Green S. Cockrell and Wm. M. Henderson, said former executors, excepted then and there, at the time, duly and legally. The court then proceeded with the trial of said cause, against the objections and exceptions of the former executors, defendants herein, when they stated that they no longer appeared in said cause, still claiming they were not parties in their individual right, and that they were not executors and declined to defend as such, but the court held they had been proper parties in their representative capacity, and that this court was not bound by the action of the lower court while this suit was pending in the Supreme and circuit courts, and under the ruling of the court, they defended said action, but then and there excepted to the said ruling of the court.''

The objection thus made by the executors is without merit. Their act of making a final settlement of the estate in their hands was unusual and unwarranted. It is not customary for final settlements of an estate to be made, pending litigation against it. And there is not a word or syllable in the record to show, as claimed by counsel for defendants, that said executor had been cited in 1880 to make a final settlement. On the contrary thereof, it seems, from the probate record introduced by them to show a final settlement of the estate of Geo. W. Smiley, that such settlement was altogether *voluntary*, on their part, since the record of their discharge shows that they had ''made publication as required by law of their intention to make a final settlement,'' etc. R. S. 1879, sec. 238. Besides, if, as claimed, the executors made final settlement under the compulsory process of a citation to that effect given in *1880*, how does it happen that such settlement was not made until *August 12, 1881?* R. S., 1879, sec. 225. Moreover, the plaintiffs were the creditors of Geo. W. Smiley's estate, their demand having been legally

exhibited against the same, at the time the suit was revived against the executors. R. S., sec. 186. This revival occurred at the January term, 1878, within one year from the death of the testator, and, of course, the demand of plaintiffs would fall within the fifth class of claims. R. S., sec. 184. And under the provisions of section 245, the probate court could not properly order the payment of legacies unless satisfied that there was sufficient money to satisfy all the demands against the estate. Debts must be paid before legacies. Kelly's Prob. Guide, sec. 355.

Furthermore, it appears from said final settlement that the *wives* of the executors, the sole legatees of Geo. W. Smiley's will, were paid nearly one thousand dollars, while the demand of plaintiffs was still unsatisfied, and in litigation. Now, under the provisions of section 239, the probate court is not authorized to make final settlement, unless the estate is "*fully administered,*" but an estate cannot be said to be fully administered, while the demands of creditors remain unadjusted and unsatisfied, and that which should have gone in satisfaction of their demands is diverted from its legitimate purpose to the satisfaction of claims which should always be subordinated to the demands of creditors. It was the duty of the executors to have made known the fact to the probate court of the existence of plaintiffs' demand, when asking for an order to pay the legacies aforesaid, if one was asked for. Indeed, section 190 requires that an administrator make a list of all demands exhibited, classing them, and make return thereof at each settlement.

So that the executors were guilty of a fraud on the court in making a final settlement when, as they must have known, the estate which they represented was not fully administered ; and such fraud was in some senses but a continuation of the original fraud of their testator. And on looking over this record, I have been impressed with the idea that this so-called final settlement was a

mere contrivance on the part of these executors to thwart the plaintiffs in this action. If this be true, it only furnishes an additional reason why the gripe of a court of equity which has fastened on the original fraud should not be shaken off by further covinous methods. And in this connection, it is not to be forgotten that these same executors appeared in this court in 1883, and took part in the appeal, although they *now* claim that they had made their final settlement and were discharged in 1881. Such subterfuges are not to be tolerated in a court of justice. And I do not believe that, in any event, the jurisdiction of the circuit court having once attached could be divested by any subsequent action of the probate court, pending litigation in the former court. *Seibel v. Simeon*, 62 Mo. 255.

But, waiving any further discussion of this point, these executors could not, as they attempted to do, in the circuit court, disavow their executorship and still claim and exercise their right to defend the suit in that capacity; they could not occupy the ambiguous attitude of appearing and not appearing at the same time; thus taking their chances to defeat the suit *as* suitors, or to defeat it on the ground that they were *not* suitors; and so this point has been ruled more than once in this court. *Tower v. Moore*, 52 Mo. 118; *Pry v. Railroad*, 73 Mo. 123; *Kronski v. Railroad*, 77 Mo. 362; *Barnes v. McMullins*, 78 Mo. 260. The proper course for them to have pursued, if desirous of testing the validity of the final settlement, and of their discharge as executors, when the court ruled that they were still parties to the suit, was to have tendered their bill of exceptions, and abandoned the case at that point. *Davis v. Davis*, 8 Mo. 56.

No reversible error occurred in admitting in evidence the record books containing the several deeds of trust. Those books, as is conceded, came from the proper repository; they were "official *registers*," re-

quired by law to be kept. 1 Greenl. Evid., secs. 483, 484, 485. It may be that, under the strict terms of section 697, Revised Statutes, that affidavit, etc., should have been made, but we will not reverse a judgment on that ground alone.

There is nothing in the testimony offered by one of the executors, conceding its relevancy, which alters the *status* of this cause as formerly presented, and established by the judgment of this court. By that judgment, the final settlement of the estate of H. W. Smiley was ordered to be set aside for fraud and an account to be taken. This the circuit court has done and this was the only thing it could do, under the terms of our mandate. *Shroyer v. Nickell*, 67 Mo. 589 ; *State ex rel. v. Cape Girardeau Court of Common Pleas*, 73 Mo. 560.

These views result in an affirmance of the judgment, and it is so ordered. All concur.